CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

OCT 20 2020

JULIA C. DUDLEY, CLERK
BY: s/ H. MCDONALD
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| HOPKINS, L.L.C. | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 4:20cv00037 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| MACHINERY INSTALLATION, COMPANY, INC., and BUTCH WILSON, | ) ) ) | By: Hon. Thomas T. Cullen<br>    United States District Judge |
| | ) | |
| Defendants. | ) | |

Before the court is Defendants' motion to transfer venue based on a forum-selection clause in a contract to purchase a commercial saw. Plaintiff opposes the motion, arguing that the forum-selection clause is invalid, that the Middle District of North Carolina would not have personal jurisdiction over it, and that the Section 1404(a) factors weigh against a transfer. (*See* ECF No. 17 at 4–14.) Because the court determines that the forum-selection clause is valid and controlling, Defendants' motion will be granted, and this action will be transferred to the Middle District of North Carolina.

I.

In 2016, Plaintiff Hopkins, LLC ("Hopkins"), a Virginia limited liability corporation, contracted with Defendant Machinery Installation Company, Inc. ("MICI"), a North Carolina corporation, to purchase a horizontal band saw. The purchase agreement was memorialized in a written contract, the alleged breach of which forms the basis for this suit. The contract for the sale of the band saw was based on a ten-page proposal assembled by MICI. The last

two pages of the proposal contain "conditions of sale," the twentieth of which—located on page 10—is a forum-selection clause providing that all federal litigation arising from the contract must be filed in the Middle District of North Carolina. (*See* ECF No. 13-1 at 15.) On August 10, 2016, MICI conveyed the proposal to Hopkins, but Hopkins claims that the proposal it received contained only nine pages, specifically not including a forum-selection clause. (*See* ECF No. 17 ¶¶ 5–6.) Hopkins responded to MICI 15 days later with a signed copy of the first nine pages of the proposal, including handwritten edits to the shipping terms. (*See* ECF No. 18-1 ¶ 3.) Upon receipt of this copy, MICI observed that Hopkins had not returned or signed the tenth page of the proposal. (*See* ECF No. 18-1 ¶ 4.) MICI conveyed the tenth page to Hopkins, and Jerry Hopkins, a manager of Hopkins, LLC,[1] signed it. (*See* ECF Nos. 13-1 ¶ 15; 17-1 ¶ 3; 18-1 ¶ 5.) Mr. Hopkins acknowledges that he was presented with and signed the tenth page, but alleges that MICI did not tell him that page was part of the contract. (*See* ECF No. 17-1 ¶ 3.) Hopkins subsequently brought suit in Virginia state court alleging fraud, violations of the UCC, and breach of contract. (*See* ECF No. 1-1.) Defendants removed the case to federal court and now move, under 28 U.S.C. § 1404(a), to transfer the case to the Middle District of North Carolina.

II.

Section 1404(a) allows a court to transfer a case "[f]or the convenience of parties and witnesses [or] in the interest of justice." 28 U.S.C. § 1404(a). In a motion to transfer under Section 1404(a), valid forum-selection clauses have "controlling weight in all but the most

---

[1] Hopkins, LLC is a "Virginia limited liability company, licensed and in good standing. Hopkins is a closely-held, family-owned and operated business located in Patrick County." (Compl. ¶ 1, ECF No. 1-1.)

exceptional cases." A*tl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013).

III.

This is not an exceptional case that justifies ignoring a valid forum-selection clause. Recognizing this, Hopkins argues that the forum-selection clause is invalid because it was fraudulently included in the contract. In order to demonstrate that the forum-selection clause should be set aside, Hopkins must make a "strong showing" that the clause is invalid for fraud. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). In both Virginia and North Carolina (the parties dispute[2] which state's law controls), fraud requires knowing misrepresentation of a material fact and justifiable reliance on that misrepresentation. *See Jared & Donna Murayama 1997 Tr. v. NISC Holdings, LLC*, 727 S.E.2d 80, 86 (Va. 2012); *Rowan Cty. Bd. of Educ. v. U.S. Gypsum Co.*, 418 S.E.2d 648, 658–59 (N.C. 1992).

Hopkins argues, in essence, that MICI presented it with the first nine pages of the contract, obtained an acceptance, and then presented the tenth page at a later time while lying about its nature in order to fraudulently procure a North Carolina forum-selection clause. (*See* ECF No. 17, pgs. 5–6.) It provides two pieces of factual evidence to support this argument. First, Hopkins points to a handwritten note on the final paper version of the contract that reads, "need 'condition sheet' signed,"[3] and then, in a different pen, the word "attached." (*See* ECF No. 17-1 ¶ 3.) Second, Hopkins's manager, Jerry Hopkins, who signed the contract on

---

[2] Ordinarily the court's first order of business would be to determine which law applies to this dispute. Because both Virginia and North Carolina law require the same showing for Hopkins to defeat the provisions of the contract it signed, however, no such analysis is necessary. Regardless of which law is applied, Hopkins has failed to justify voiding the forum-selection clause.

[3] Pages 9 and 10 of the contract are labeled "conditions of sale."

- 3 -

its behalf, stated that he recalls being presented with page 10 *separately* from the rest of the contract and being told it had to do with a "warranty for the machine," but does not recall being told it was part of the contract for purchase of the band saw.[4] (*See id.*)

None of this evidence indicates that the forum-selection clause on page 10 was fraudulently inserted into the contract. Jerry Hopkins's testimony does not indicate fraud because page 10 *does* deal with warranties for the machine and because the page is self-evidently part of the contract. For one thing, the contract is paginated, and page 10 is emblazoned with a "10" in the upper-right hand corner. (*See* ECF No. 13-1 ¶ 15.) For another, the first paragraph on page 10 is numbered "11" and contains information that is clearly part of a larger contract. (*See id.*) The self-evident nature of the document means that, even if Hopkins could prove that MICI's agent lied about the contents of the document, Hopkins could not make out fraud because "there c[an] be no reasonable reliance on . . . oral statements in the face of plainly contradictory contractual language." *Foremost Guar. Corp. v. Meritor Sav. Bank*, 910 F.2d 118, 126 (4th Cir. 1990). Likewise, the handwritten note on the first page does not indicate fraud because it is consistent with all parties' account of the facts. It is undisputed that Mr. Hopkins was not initially presented with the full conditions of purchase; MICI provided them

---

[4] Mr. Hopkins also argues that he "never knew" the contract contained a forum-selection clause and "never intended" to agree to such a clause. (*See* ECF No.17-1 ¶ 5.) Nevertheless, Mr. Hopkins signed page 10, the page that contained the forum-selection clause approximately one inch above his signature. A party is presumed to have read a contract he signs. *First Nat'l Exch. Bank of Va. v. Johnson*, 355 S.E.2d 326, 329–30 (Va. 1987) (citing *Metro Realty v. Woolard*, 286 S.E.2d 197, 200 (Va. 1982)) ("In the absence of fraud, duress, or mutual mistake, as here, an individual having the capacity to understand a written document who signs it after reading it, or who signs it without reading it, is bound by the signature."); *Davis v. Davis*, 124 S.E.2d 130, 133 (N.C. 1962) ("The law imposes on everyone a duty to act with reasonable prudence for his own safety. So one who contracts with another cannot ignore the contract merely because he becomes dissatisfied upon learning of the obligation assumed when, without excuse, he made no effort to ascertain the terms of the contract at the time he executed it. One who signs a written contract without reading it, when he can do so understandingly, is bound thereby unless the failure to read is justified by some special circumstance."). It is no defense to a valid contract to say, "I didn't read it before I signed it," or "I didn't mean to agree to *that* part."

at a later date. MICI, therefore, noted on the contract that it needed a signed copy of page 10 and then, after obtaining Mr. Hopkins's signature, noted that the executed page was attached.

These facts do not show any of the elements of fraud. There is no evidence of a misstatement of material facts and, even if there were, Hopkins cannot show justifiable reliance on that statement. *See State Farm Mut. Auto. Ins. Co. v. Remley*, 618 S.E.2d 316, 321 (Va. 2005) (quoting *Prospect Dev. Co. v. Bershader*, 515 S.E.2d 291, 297 (Va. 1999)) (applying Virginia law); *Terry v. Terry*, 273 S.E.2d 674, 677 (N.C. 1981) (quoting *Ragsdale v. Kennedy*, 209 S.E.2d 494, 500 (N.C. 1974)) (applying North Carolina law). From the evidence before the court, it appears that Hopkins was presented with the full terms of the contract—all 10 pages—and voluntarily agreed to those terms, albeit not all at once. Nothing presented by Hopkins negates the fact that the record contains a signed copy of page 10, a document that is self-evidently part of the conditions of sale for the band saw. Without further evidence, Hopkins has not made a strong showing that the forum-selection clause was fraudulently procured.

Hopkins presents two additional arguments; neither is persuasive. First, it argues that the case cannot be transferred to the Middle District of North Carolina because that court has no personal jurisdiction over Hopkins, who is the defendant with respect to MICI's counterclaim. But section 1404(a) allows the court to transfer the case to "any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Transfer is permissible here under either rationale. Hopkins consented to the Middle District of North Carolina by signing the forum-selection clause, "effectively exercis[ing] its 'venue privilege'" before the dispute arose. *Atl. Marine*, 571 U.S. at 63. It is also proper because the action could have been brought in the Middle District

of North Carolina as MICI is incorporated in North Carolina. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

Second, Hopkins argues that the Section 1404(a) factors counsel against transfer. Those factors are largely irrelevant where, as here, the parties have agreed to a forum-selection clause. *See Atl. Marine*, 571 U.S. at 60. Because the court has determined that the forum-selection clause is valid, it will be given "controlling weight." *Id.*

IV.

For these reasons, Defendant MICI's motion to transfer venue will be granted. An appropriate Order will be entered.

**ENTERED** this 20th day of October, 2020.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE